**ALLIED BANK INTERNATIONAL, For itself and as Agent for American Fletcher National Bank, American Fletcher Bank (Suisse) A.G., Atlantic International Bank, Banco Exterior De Espana, Banco De Madrid, Bank of Miami, Intercontinental Bank of Miami Beach, Bank of Montreal, Bank of New Orleans, Bank of Virginia International, Bayerische Vereinsbank Int'l. S.A., Bayerische Vereinsbank, A.G., Bremar Holdings Limited, Cleveland Trust Company, Columbia Union National Bank, Credit Lyonnais, Deutsche Bank A.G., Export-Import Bank of the United States, Federal Deposit Insurance Corp., Fidelity National Bank of South Miami, Fidelity Union Trust Company, First Commercial Bank of Taiwan, First National Bank of Fort Worth, First National City Bank (Interamerica), First Pennsylvania Bank, N.A., Hartford National Bank, International Commercial Bank of China, Irving Inter-American Bank, Irving Trust Company Kyowa Bank Limited, National Westminster Bank Ltd., Overseas Investors Inc., The Royal Bank of Canada, The Sanwa Bank Limited, Equibank N.A., Southeast First National Bank of Miami, Stockholms Sparbank, and United California Bank, Plaintiff,**

v.

**BANCO CREDITO AGRICOLA DE CARTAGO, Banco Anglo Costarricense and Banco National De Costa Rica, Defendants.**

No. 82 Civ. 0664.

United States District Court,
S.D. New York.

July 8, 1983.

Santora, Shenkman & Kushel by Robert B. McKay, New York City, for plaintiff.

White & Case by Jeffrey Barist, Robert M. Kelly, Diane Dimond, New York City, for defendants.

## OPINION

GRIESA, District Judge.

This is a suit against three Costa Rican banks which are wholly owned by the government of Costa Rica. Plaintiff moves for summary judgment. Defendants move to dismiss pursuant to Fed.R.Civ.P. 12(b). Both motions are denied.

1442

## Facts

The essential facts are not in dispute. Plaintiff Allied Bank International ("Allied") is a bank chartered in the United States with its principal place of business in New York. Allied is the designated agent to prosecute this action on behalf of a syndicate of 39 banks. As a result of certain banking transactions which need not be described in detail, the three defendant Costa Rican banks in 1976 executed a series of promissory notes payable to the syndicate banks. Payments under the notes were due every six months commencing July 1, 1978 through July 1983.

Payments were made on schedule until 1981. In that year Costa Rica was encountering a serious economic crisis. In response, the Costa Rican government imposed restrictions upon foreign exchange transactions. One of these restrictions was to require approval by the Central Bank of Costa Rica of any foreign exchange transaction on the part of Costa Rican banks.

On July 2, 1981 defendant Banco Cartago applied to the Central Bank for authorization to accomplish the foreign exchange transaction necessary to make the payment due on July 1 to the syndicate. Banco Cartago received no immediate reply from the Central Bank. On August 27, 1981 the Central Bank's Board of Directors passed a resolution prohibiting public sector entities, such as defendant banks, from paying any interest or principal on debts to foreign creditors denominated in foreign currency. On November 6, 1981 the President of Costa Rica and the Ministry of Finance published Executive Decree 13103–H preventing any institution in Costa Rica from making payment on an external debt without prior approval of the Central Bank in consultation with the Ministry of Finance. On November 9, 1981 the Central Bank denied Banco Cartago's pending application for foreign exchange. Subsequently, the Central Bank notified each of the defendant banks that they would not be permitted to make external debt repayments pending resolution of the entire Costa Rican external debt situation. This effectively blocked all further payments on the promissory notes by defendant banks to plaintiffs.

All three defendant banks have now missed certain of their required semi-annual payments. Banco Cartago has a total unpaid principal balance of about $3.8 million. Banco Anglo has a principal balance of about $500,000, and Banco Nacional has a principal balance of about $186,000. Allied, on behalf of the syndicate, seeks to invoke the applicable acceleration clauses and to recover these balances with accrued interest.

## Conclusions

There is no question about the fact that defendant banks have defaulted on debts due to Allied and the other syndicate banks.

However, various defenses are raised. All three defendants challenge personal jurisdiction, including the validity of service of process. They deny subject matter jurisdiction, asserting sovereign immunity. They raise the defense of the act of state doctrine.[1]

The defenses of lack of personal jurisdiction, invalidity of process, and lack of subject matter jurisdiction are urged as grounds for dismissal by way of motion. The defense based on the act of state doctrine is *not* presented as a ground for dismissal on motion, but as an issue which prevents the granting of summary judgment to Allied.

For the reasons which will be explained, the Court decides against defendants with respect to the points asserted on the motion to dismiss. However, the defense of the act of state doctrine is a meritorious one and in view thereof Allied's motion for summary judgment must be denied.

In connection with personal jurisdiction, it simply needs to be said that defendants agreed that the debts were to be paid in New York and expressly agreed to be sued in New York. The service of process argument is so lacking in merit as to require no discussion.

---

1. Defendants Banco Anglo and Banco Nacional claim that the acceleration procedure was improper as to them. This contention is without merit and requires no discussion.

The sovereign immunity issue is covered by statute—*i.e.,* the Foreign Sovereign Immunities Act of 1976, 28 U.S.C. §§ 1602 *et seq.* The question in the present case is whether the well-known "commercial activity" exception is or is not applicable. The statute provides that a foreign state shall not be immune where "the action is based" upon "an act outside the territory of the United States in connection with a commercial activity of the foreign state elsewhere" and where the act "causes a direct effect in the United States." 28 U.S.C. § 1605(a)(2).

■ It is quite clear that the execution of the promissory notes, upon which this action is based, was a commercial activity within the meaning of the statute. *See* 28 U.S.C. § 1603(d); H.R.Rep. No. 94–1487, *reprinted in* [1976] U.S.Code Cong. & Ad. News 6604, 6609, 6615. It follows that the action is not barred by the doctrine of sovereign immunity.

Even though the execution of the notes was a commercial activity, and "the action is based" upon these notes within the meaning of the statute, a different question arises by virtue of the fact that the payment of the notes *was prevented* by certain directives of the Central Bank of Costa Rica, and of the President and Ministry of Finance of that country. This question is whether the governmental acts preventing payment of the notes fall within the act of state doctrine.

■ Even where the defense of sovereign immunity does not apply, nevertheless the act of state doctrine may prevent recovery. *Empresa Cubana Exportadora, Inc. v. Lamborn & Co.,* 652 F.2d 231, 238–9 n. 11 (2d Cir.1981). The act of state doctrine is designed to avoid judicial action which would impinge upon the foreign relations of the United States. *IAM v. OPEC,* 649 F.2d 1354, 1359 (9th Cir.1981), *cert. denied,* 454 U.S. 1163, 102 S.Ct. 1036, 71 L.Ed.2d 319

(1982). The doctrine ultimately derives from the separation of powers provided in the Constitution. *Banco Nacional de Cuba v. Sabbatino,* 376 U.S. 398, 423, 84 S.Ct. 923, 937, 11 L.Ed.2d 804 (1964).

The Second Circuit has recently summarized certain of the principal factors relied upon in the decisions for justifying application of the act of state doctrine—*i.e.,* where a court is asked to judge a foreign government's conduct under ambiguous principles of international law; where the challenged governmental conduct was public rather than commercial in nature, and where its purpose was to serve an integral governmental function;[2] and where the executive branch of the United States Government has stated its view regarding the propriety of applying the act of state doctrine or regarding the validity of the foreign governmental act in question. *Texas Trading & Milling Corp. v. Federal Republic of Nigeria,* 647 F.2d 300, 316 n. 38 (2d Cir.1981), *cert. denied,* 454 U.S. 1148, 102 S.Ct. 1012, 71 L.Ed.2d 301 (1982).

■ The crucial factor which has been shown to exist in the instant case is that the conduct of the Costa Rican government which *prevented payment*[3] of the notes was public in nature, rather than commercial, and its purpose was to serve a governmental function. The record demonstrates that the actions of the Central Bank of Costa Rica and the President and Finance Ministry of that country were undertaken in response to a serious national economic crisis, and that these actions were of the type which some governments undertake to try to assist in such a crisis—*i.e.,* restrictions upon foreign currency transactions. There is no doubt that the actions of the Costa Rican government here were intended to serve a public, rather than a commercial, purpose. They were clearly an exercise of a governmental function. *See Hunt v. Mobil Oil Corp.,* 550 F.2d 68 (2d Cir.), *cert. denied,*

---

**2.** There is an obvious area of overlap between the "commercial activity" question under the Foreign Sovereign Immunities Act, and certain of the considerations here described in connection with the act of state doctrine.

**3.** As already noted, there is a distinction between the fact that "the action is based upon" a "commercial activity" for the purpose of the Foreign Sovereign Immunities Act, and the fact that payment of the notes was prevented by certain other acts of the Costa Rican government.

434 U.S. 984, 98 S.Ct. 608, 54 L.Ed.2d 477 (1977). The facts in this case are distinguishable from the facts in *Alfred Dunhill of London, Inc. v. Cuba,* 425 U.S. 682, 96 S.Ct. 1854, 48 L.Ed.2d 301 (1976) and *Texas Trading, supra,* in which the act of state doctrine was held not applicable.

A judgment in favor of Allied in this case would constitute a judicial determination that defendants must make payments contrary to the directives of their government. This puts the judicial branch of the United States at odds with policies laid down by a foreign government on an issue deemed by that government to be of central importance. Such an act by this court risks embarrassment to the relations between the executive branch of the United States and the government of Costa Rica.

As already stated, defendants do not seek dismissal of the action, by way of motion, on the basis of the act of state doctrine. They urge the point in opposing Allied's motion for summary judgment. It is clear that this defense dictates denial of Allied's motion.

Allied's motion for summary judgment is denied. Defendants' motion to dismiss is denied.

So ordered.